UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. DEBRA MARSHALL and PEGGY THURMAN, DEBRA MARSHALL, individually, and PEGGY THURMAN, individually,<br><br>Plaintiffs/Relators,<br><br>vs.<br><br>WOODWARD GOVERNOR CO.,<br><br>Defendant. | 06 C 1746<br><br>Judge Feinerman |

### **MEMORANDUM OPINION AND ORDER**

Debra Marshall and Peggy Thurman brought this suit on behalf of the United States and themselves against Woodward Governor Company, alleging that it violated the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, in connection with its manufacture and sale of military parts to General Electric and the Department of Defense ("DoD"). Doc. 1. This court granted summary judgment for Woodward, 85 F. Supp. 3d 973 (N.D. Ill. 2015), and the Seventh Circuit affirmed, 812 F.3d 556 (7th Cir. 2015). Woodward filed a bill of costs seeking $124,860.44 under Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920. Doc. 276. Relators filed an opposition, Woodward filed a reply, and Relators filed a surreply. Docs. 290, 298, 306. For the following reasons, the court awards Woodward $35,174.92 in taxable costs.

Rule 54(d)(1) provides, in relevant part: "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). A court awarding costs must ask first "whether the cost imposed on the losing party is recoverable" under § 1920 and, "if so, whether the amount assessed for that item was reasonable." *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir.

1

2000). Recoverable costs include (1) "[f]ees of the clerk and marshal"; (2) fees for transcripts "necessarily obtained for use in the case"; (3) "[f]ees and disbursements for printing and witnesses"; (4) "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case"; (5) docket fees; and (6) "[c]ompensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services." 28 U.S.C. § 1920. "Although a district court has discretion when awarding costs, the discretion is narrowly confined because of the strong presumption created by Rule 54(d)(1) that the prevailing party will recover costs." *Contreras v. City of Chicago,* 119 F.3d 1286, 1295 (7th Cir. 1997) (internal quotation marks and citation omitted).

Relators do not dispute that they owe costs, and instead focus on how much they owe. Their principal objection is to Woodward's request for $89,226.65 in costs related to electronic discovery. Specifically, Relators argue that the costs of extracting metadata from native files and loading electronic information into document review platforms are not taxable costs. Doc. 290 at 35-42.

Relators are correct. The bill of costs divides Woodward's e-discovery requests into four categories: "TIFF Rendering" (for which Woodward seeks $595.60), "Native Rendering" ($84,477.75), "Post Review TIFF" ($3,322.64), and "Electronic Bates Stamp" ($830.66). Doc. 276-2 at 31. Relators submit an affidavit by Andrew Reisman, the CEO of an e-discovery and computer forensics company, which avers that Reisman reviewed Woodward's bill of costs and e-discovery invoices and deduced that "Native Rendering" refers to the "processing of emails and other user created file types (e.g. Microsoft Office documents, PowerPoint presentations, image files, text files and PDFs) to extract associated text and metadata for inclusion into a load file that can be imported into a document review platform." Doc. 290-1 at 11-12, ¶¶ 2, 4.

Neither Woodward's reply brief nor the affidavit of Nick Reizen, Vice President of Woodward's e-discovery vendor, contradicts Reisman's characterization. Doc. 298; Doc. 298-2 at ¶ 11. Instead, Woodward asserts that the Seventh Circuit affirmed an award of costs for similar services in *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009). Doc. 298 at 7-10.

Woodward reads too much into *Hecker*. The following is *Hecker*'s entire discussion of e-discovery costs:

> Fidelity asked for $186,488.95 in costs, and the court awarded it $164,814.43. While this is a substantial amount, we see no abuse of discretion in the district court's decision. Plaintiffs' principal complaint is that it was improper to award Fidelity its costs for document selection, as opposed to document processing. Fidelity responds that the costs were for converting computer data into a readable format in response to plaintiffs' discovery requests; such costs are recoverable under 28 U.S.C. § 1920. The record supports Fidelity's characterization of the costs, and so we will not disturb the district court's order.

556 F.3d at 591. *Hecker* holds that prevailing parties can recover the cost of "converting computer data into a readable format," but it does not specify which particular conversion processes fall within that category. District courts in the Seventh Circuit, meanwhile, have consistently held that "converting computer data into a readable format" encompasses *only* the process of converting electronic information into TIFF or PDF files and perhaps the process of parsing PDF and TIFF files so that they can be searched for words and characters, *see Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, 2016 WL 316865, at *6 (N.D. Ill. Jan. 26, 2016) (collecting cases), and that it does *not* encompass the process of extracting metadata from native files or loading files into document review platforms, *see Chi. Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 2014 WL 125937, at *9 (N.D. Ill. Jan. 14, 2014); *Phillips v. WellPoint Inc.*, 2013 WL 2147560, at *4, 6 (S.D. Ill. May 16, 2013); *Johnson v. Allstate Ins. Co.*, 2012 WL 4936598, at *5-6 (S.D. Ill. Oct. 16, 2012). The Third and Fourth Circuits are in

3

accord. *See Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 260 (4th Cir. 2013); *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 170 (3d Cir. 2012).

Woodward points out that, according to the appellate briefs in *Hecker*, the prevailing party in *Hecker* received costs "for loading and processing data collected from … servers and custodian hard drives, so that the material would be reviewable by standard discovery review tools and producible to plaintiff." Doc. 298 at 8. That does not clear things up, it is unclear whether the brief used the term "processing data" to mean "extracting metadata" (which the above-cited cases hold is not a recoverable cost) or "converting data in native files into PDFs and TIFFs" (which the above-cited cases hold is a recoverable cost). And even if the prevailing party in *Hecker* did recover costs for extracting metadata from native files or for loading native data into review platforms, the Seventh Circuit's opinion gives no indication that the court actually took those facts into account; it never once mentions "extraction," "metadata," or "loading," and thus cannot be understood to have resolved whether the costs of those processes are recoverable. *See United States v. Richardson*, 558 F.3d 680, 681 (7th Cir. 2009) ("[T]he absence of any discussion [in a prior case] means that there is no holding on the point that might bind us in this case."); *Matter of Volpert*, 110 F.3d 494, 497 (7th Cir. 1997) (reasoning that because earlier opinions "did not discuss" whether a statute applies to bankruptcy courts, those opinions did not settle the question).

So *Hecker* does not decide the issue presented here, and the Third Circuit's opinion in *Race Tires* explains best why Relators have the better of the argument. Section 1920(4) allows the prevailing party to tax the "costs of making copies." In the era before e-discovery, that language neatly divided discovery costs into taxable and non-taxable components, with the non-taxable components significantly outweighing the taxable ones. As the Third Circuit noted:

4

> The process employed in the pre-digital era to produce documents in complex litigation … involved a number of steps essential to the ultimate act of production. First, the paper files had to be located. The files then had to be collected, or a document reviewer had to travel to where the files were located. The documents, or duplicates of the documents, were then reviewed to determine those that may have been relevant. The files designated as potentially relevant had to be screened for privileged or otherwise protected material. Ultimately, a large volume of documents would have been processed to produce a smaller set of relevant documents. None of the steps that preceded the actual act of making copies in the pre-digital era would have been considered taxable. And that is because Congress did not authorize taxation of charges necessarily incurred to discharge discovery obligations. It allowed only for the taxation of the costs of making copies.

674 F.3d at 169. That is, costs for extracting relevant and non-privileged documents and information from a litigant's records and producing them were not taxable when the records were paper, and they are not taxable now that the records are electronic. *Hecker*'s very brief discussion of e-discovery costs cannot be understood to alter the traditional understanding of recoverable copying costs by significantly broadening the activities whose costs can be charged to the losing party.

For these reasons, the court adopts the consensus view. Relators' objection is sustained, and the bill of costs is reduced by $84,477.75.

Relators also object to Woodward's $595.60 request for "TIFF Rendering" on the ground that the invoices supporting the request are "dated March 31, 2013 and October 31, 2013," even though Woodward finished producing electronically stored information on March 6, 2013. Doc. 290 at 36. Woodward responds that the March 31 invoice reflects TIFF Rendering performed on hard copy documents produced electronically after March 6, but that it will abandon the $145.78 in charges reflected on the October 31 invoice. Doc. 298 at 5 n.2, 9 n.5; Doc. 298-2 at ¶ 5. Relators reply with a general denial, but do not explain why Woodward is wrong about the March 31 invoice. Doc. 306 at 12-13. Accordingly, the objection to the costs based on the

5

October 31 invoice is sustained, but the objection to the costs based on the March 31 invoice is denied, and the bill of costs is further reduced by $145.78.

Relators next object to Woodward's request for $4,645.80 for making physical copies. They first argue that Woodward's copying cost per page, $0.20, is too high. Doc. 290 at 21-22. But judges in this District, including the undersigned, routinely grant copying costs of $0.20 per page. *See Allen v. City of Chicago*, 2013 WL 1966363, at *4 (N.D. Ill. May 10, 2013); *Pugh v. Bd. of Ed. of the City of Chi.*, 2012 WL 5199629, at *4 (N.D. Ill. Oct. 22, 2012); *Kaplan v. City of Chicago*, 2009 WL 1940789, at *4 (N.D. Ill. July 6, 2009) ("[C]ourts in this district have found photocopying costs between $0.10 and $0.20 per page to be reasonable."); *Grayson v. City of Chicago*, 2003 WL 22071479, at *2 (N.D. Ill. Sept. 3, 2003) ("Copy rates of between $0.10 and $0.20 per page have been found to be reasonable."). FedEx copy centers may charge less than $0.20 per page to copy in bulk, but Woodward argues convincingly that its documents reflected sensitive national security information, and so popping down to the corner FedEx was not an option. Doc. 298 at 14. Twenty cents per page is reasonable.

Relators also note that, on top of seeking costs for courtesy copies of its own filings, Woodward requests $3,075.00 for making copies of pleadings and court orders. Doc. 290 at 23-27. That is true, and the request is largely inappropriate. "The expense of copying materials reasonably necessary for use in a case are recoverable costs under 28 U.S.C. § 1920(4)," *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1410 (7th Cir. 1991), but the only court papers whose copying was reasonably necessary are those for which Local Rule 5.2(f) required Woodward to submit a courtesy copy to the judge. *Compare Wells v. Johnson*, 2012 WL 3245955, at *1 (N.D. Ill. Aug. 6, 2012) (costs of courtesy copies are necessarily incurred), *and Perry v. City of Chicago,* 2011 WL 612342, at *2 (N.D. Ill. Feb. 15, 2011) (same), *with Hruska*

6

*v. Forest Preserve Dist. of Cook Cnty., Ill.*, 2013 WL 1984476, at *2 (N.D. Ill. May 10, 2013) (denying costs for making two copies of court filings because the Local Rule required only one courtesy copy). Section 1920(4) "does not encompass [a party's] copying of court filings for its own use," and the only reason that Woodward could have made copies of *Relators'* filings and the *court's* orders was for Woodward's own use. *McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1584 (7th Cir. 1990). The same is true of Woodward's making copies of Relators' discovery requests and responses (which Relators served electronically) and copies of its expert reports (which it served on Relators electronically and which do not fall within the scope of Local Rule 5.2(f)). Woodward's costs are further reduced by $2,147.80—$2,052.40 for the copies of Relators' filings and court orders, $53.40 for the copies of Relators' discovery requests and responses, and $42.00 for the copies of its expert reports. Doc. 276-2 at 10-25, 27, 30.

Relators also argue that Woodward is charging twice for certain copies of documents produced by non-parties. Woodward requests $184.80 for copying 924 pages produced by the DoD and $32.60 for 163 pages produced "pursuant to Touhy requests." Doc. 276-2 at 27; *see United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951). Relators contend that the DoD produced 921 pages rather than 924 pages. Doc. 290 at 29. More significantly—it could hardly be *less* significant than three extra pages—they say that the 163 pages produced "pursuant to Touhy requests" are a subset of the 921 pages that the DoD produced. *Ibid*. In other words, Relators say that while Woodward's bill suggests that the DoD produced 1,087 pages (924 plus the 163 produced in response to *Touhy* requests), in reality the DoD produced only 921 pages, *including* the 163 pages produced in response to *Touhy* requests. Woodward's reply brief does not contest Relators' characterization, Doc. 298 at 5 n.2, 13 n.6, and so Woodward's bill of costs is further reduced by $33.20 (166 pages at $0.20 per page).

Costs related to depositions are the next significant category in dispute.  Woodward requests $275.00 for serving deposition subpoenas on witnesses Daniel Boucek and Harrison DySard; specifically, it requests $55.00 for each day on which it served or attempted to serve those witnesses, and it asserts that it took four days to serve Boucek and one day to serve DySard.  Doc. 276-2 at 3.  Relators argue that Woodward should get nothing for its failed attempts to serve Boucek.  Doc. 290 at 8-9.  That is incorrect.  The prevailing party may receive costs for failed attempts at service, provided that the attempts were reasonable.  *See Cadle v. Geico Gen. Ins. Co.*, 2015 WL 4352048, at *4 n.7 (M.D. Fla. July 14, 2015); *Jardin v. DATAllegro, Inc.*, 2011 WL 4835742, at *9 (S.D. Cal. Oct. 12, 2011).  Relators give no reason to believe that the failed attempts to serve Boucek were unreasonably executed.

Relators also argue that Woodward should receive no costs for personally serving Boucek and DySard.  Boucek and DySard were DoD employees, and according to Relators, litigants seeking to depose DoD employees must serve deposition subpoenas on the DoD Office of General Counsel.  Doc. 290 at 9-10; 32 C.F.R. § 257.5.  But the regulation cited by Relators, 32 C.F.R. § 257.5, provides only that "The General Counsel, Department of Defense, shall accept service of process for the [Office of the Secretary of Defense]."  Relators do not explain how that provision means that litigants seeking to depose DoD employees *must* serve deposition subpoenas on the Office of General Counsel and *need not* serve the deponents themselves.  Civil Rule 45, meanwhile, provides that "[s]erving a subpoena requires delivering a copy to the named person"—that is, to the deponent.  Fed. R. Civ. P. 45(b)(1).  Woodward thus deserves costs for its attempts to serve Boucek and DySard personally.

Relators next argue that they should not have to reimburse Woodward $4,545.00 for the cost of videotaping the Boucek and DySard depositions.  Doc. 276-2 at 6-7; Doc. 290 at 10-12.

8

As Relators acknowledge, though, courts may tax the costs of videotaping a deposition if "videotaping the deposition was reasonable and necessary." Doc. 290 at 10; *see Little v. Mitsubishi Motors N. Am.*, 514 F.3d 699, 702 (7th Cir. 2008); *Barber v. Ruth*, 7 F.3d 636, 645 (7th Cir. 1993); *Commercial Credit Equip. Corp. v. Stamps*, 920 F.2d 1361, 1368 (7th Cir. 1990). Woodward argues that it had to videotape the Boucek and DySard depositions because there was a real risk that they would not be available to testify at trial. As noted, both men were DoD employees, and a standing DoD order prohibits employees from releasing official information in litigation without the Office of General Counsel's consent. *See* Department of Defense Directive 5405.2 (reproduced at Doc. 290-1 at 26-32); *see also Touhy*, 340 U.S. at 468 (holding that executive branch officers may refuse to testify or produce documents in response to a subpoena if their agency has prohibited them from doing so). It is true, as Relators point out, that the DoD had cooperated with the litigants up until the Boucek and DySard depositions, but Woodward had no guarantees that the Department would *continue* to cooperate. Videotaping the depositions was reasonable and necessary, and so Woodward's request to tax the costs of videotaping is granted.

Relators next argue that they should not have to reimburse Woodward for the cost of creating word indexes for deposition transcripts. Woodward's bill of costs requests $3.65 per page for certain deposition transcripts; for eight of those transcripts, the page count includes lengthy indexes. Doc. 290 at 15-16; Doc. 298 at 17-18. All in all, the indexes are 516 pages long, which means that they account for $1,883.40 of Woodward's bill. Doc. 290 at 16. Relators argue that text-searchable electronic transcripts make word indexes unnecessary. Doc. 290 at 16-17. Woodward responds that it needed the indexes so that its lawyers could quickly look up relevant parts of the transcripts while conducting later depositions, Doc. 298 at 17, but

that does not explain how the indexes accomplish anything that text-searchable electronic transcripts do not; Woodward does not contend that its lawyers were unable to bring laptops into the deposition room. The word indexes may have made Woodward's lawyers' lives marginally easier, but it was unreasonable to spend $1,883.40 for that convenience. *See In re Text Messaging Antitrust Litig.*, 2014 WL 4343286, at *7 (N.D. Ill. Sept. 2, 2014) (refusing to tax both the costs of word indexes and the costs of electronic deposition transcripts); *Porter v. City of Chicago*, 2014 WL 3805681, at *2 (N.D. Ill. Aug. 1, 2014) (refusing to tax the costs of word indexes); *Druckzentrum Harry Jung GmbH & Co. v. Motorola, Inc.*, 2013 WL 147014, at *5 (N.D. Ill. Jan. 11, 2013) (same); *Plyler v. Whirlpool Corp.*, 2012 WL 5845428, at *2 (N.D. Ill. Nov. 19, 2012) ("Additional items such as … word indexes … are regarded either as a convenience or an ordinary business expense for the lawyer and are not generally compensable."); *Angevine v. Watersaver Faucet Co.*, 2003 WL 23019165, at *4 (N.D. Ill. Dec. 23, 2003) (refusing to tax the costs of word indexes); *but see LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 2011 WL 5008425, at *2 (N.D. Ill. Oct. 20, 2011) (taxing costs for word indexes). Woodward's bill of costs is further reduced by $1,883.40.

Relators also object to Woodward's request to be reimbursed $997.59 for the cost of scanning deposition exhibits. They argue that every document that Woodward scanned was already available in electronic form, either because Relators had produced the document electronically in discovery or because Woodward had an electronic copy before discovery began. Doc. 290 at 13. Woodward argues that, while it did have electronic copies of most of the documents it scanned, it could not have easily accessed them and could not have been expected to "search through thousands of documents" to get its hands on the deposition exhibits. Doc. 298 at 18. Woodward adds that witnesses had marked up some of the exhibits that it scanned, which

its already existing electronic copies did not reflect, and that some witnesses brought their own exhibits. *Ibid*.

The court cannot resolve those disputes on the current record. Woodward has failed to identify the documents that it scanned; it says only that it "scanned exhibits" for certain depositions. Doc. 276-2 at 5-7, 40-87. Maybe Woodward would have had a hard time finding electronic copies of the exhibits in its own system, but maybe not. Maybe the witnesses marked up hundreds of pages of exhibits, but maybe they marked up only a few. Woodward insists that Relators have the burden of proving that its scanning costs were unnecessary, Doc. 276-2 at 2-3, but that is incorrect. It is true that Relators would have borne the burden of overcoming Rule 54(d)'s heavy presumption that Woodward is entitled to costs *generally*. *See Telular Corp. v. Mentor Graphics Corp.*, 2006 WL 1722375, at *1 (N.D. Ill. June 16, 2006). But Woodward is responsible for proving that the specific costs that it seeks to recover were reasonable and necessary. After all, it is the only party with any information about which exhibits it scanned, why it scanned them, whether it already had access to electronic copies of those exhibits, and how much it spent. *See Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 969 (N.D. Ill. 2010) ("The prevailing party has the burden of demonstrating the amount of its recoverable costs.") (internal quotation marks omitted); *Telular*, 2006 WL 1722375, at *1. And while the prevailing party does not need to "submit a bill of costs containing a description so detailed as to make it impossible economically to recover" costs for exemplification, *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991), it does need "to provide the best breakdown obtainable from retained records"—especially where, as here, the non-prevailing party gives good reason to believe that the claimed costs were unnecessary.

Without better information, the court cannot grant Woodward's request to be reimbursed for scanning. The bill of costs is therefore further reduced by $997.59.

Finally, Relators object to Woodward's request for $885.80 for "travel expenses paid" to an expert witness, W. Daniel Kay. Doc. 276-2 at 8. Relators concede that reasonable airfare for witnesses is compensable, Doc. 290 at 19; *see* 28 U.S.C. § 1821(c)(4), but they argue that $885.80 was too expensive for a flight from Hartford, Connecticut (where Kay lived) to Chicago in December (when Kay made the trip). Doc. 290 at 19. Relators searched for similar flights—flights from Hartford to Chicago in December, and flights from Hartford to Chicago booked on short notice—and found that they cost only around $300. *Id*. at 20-21. Relators' test deserves some weight, but it ultimately is unconvincing. There is no evidence in the record that a last minute booking in December (a common time for travel) costs the same as a last minute booking in July. And Woodward has submitted an invoice showing that it actually paid Kay $885.80 for the flight. Doc. 276-2 at 93. After weighing the available evidence, the court finds that Kay's airfare was reasonable and necessary, and grants Woodward's request for reimbursement.

For the foregoing reasons, Relators' objections to Woodward's bill of costs are sustained in part and overruled in part. Woodward's bill of costs of $124,860.44 is reduced by $89,685.52, resulting in a cost award of $35,174.92.

May 12, 2016

United States District Judge